UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERROL WRIGHT, on behalf of himself individually and
All others similarly situated,

                Plaintiff,             **MEMORANDUM AND ORDER**
                                       12 CV 4281 (DRH) (GRB)

      - against -

PHILLIPS & COHEN ASSOCIATES, LTD.,

                Defendant.
------------------------------------------------------------X
**APPEARANCES:**

**FAGENSON & PUGLISI**
Attorneys for Plaintiff
450 Seventh Avenue, Suite 3302
New York, NY 10123
By:    Novlette Rosemarie Kidd, Esq.

**SESSIONS FISHMAN NATHAN ISRAEL LLC**
Attorneys for Defendant
3 Cross Creek Drive
Flemington, NJ 08822
By:    Aaron R. Easley, Esq.
       Michael D. Slodov, Esq.


**HURLEY, Senior District Judge:**

       Plaintiff Errol Wright ("Plaintiff") brings this action against Defendant Philips & Cohen

Associates ("Defendant")[1], alleging violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, *et seq*.  Before the Court is Defendant's Motion to Dismiss the

Plaintiff's Amended Complaint ("Motion") pursuant to Federal Rule of Civil Procedure ("Rule")

12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons set forth

below, Defendant's Motion is granted.

---

[1] Although plaintiff brings this action "on behalf of himself individually and all others
similarly situated" no motion for class certification has been made.

## BACKGROUND

The following facts are taken from Plaintiff's First Amended Class Action Complaint ("Amended Complaint") and are presumed to be true for purposes of Defendant's present Motion. At some point in time Plaintiff incurred a debt "for personal purposes" to Fingerhut Direct Marketing ("Fingerhut"). (Am. Compl. ¶ 9.) It is thus undisputed that Plaintiff is a "consumer" under 15 U.S.C. § 1692a(3), which defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Plaintiff later defaulted on the debt to Fingerhut. (*Id.* ¶ 10.)

On July 6, 2012, Defendant, who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or alleged to be owed or due to others," wrote to Plaintiff in an attempt to collect the debt Plaintiff had incurred to Fingerhut. (*Id.* ¶¶ 4, 5, 11.) Defendant addressed the letter to "ERROL WRIGHT C/O FAGENSON & PUGLISI," at the address of Fagenson & Puglisi, Plaintiff's attorneys. (*Id.* ¶ 15.) In the letter, Defendant labeled Portfolio Asset Group ("PAG") as its "Client," labeled Fingerhut as the "Original Creditor," and provided Plaintiff's original account number ("Orig. Acct#") ending in "6123." (*Id.* ¶ 12.) Plaintiff had not previously conducted any business with PAG, nor had he held any account with PAG. (*Id.* ¶ 34.) The letter, the salutation of which was addressed to Plaintiff, stated:

> Your account has been referred to our office for collection on behalf of our above referenced client. To resolve this matter and prevent any further collection activity, full payment should be sent to this office at the address above. IT IS NOT IN YOUR BEST INTEREST TO NEGLECT THIS ACCOUNT! YOU MAY CONTACT OUR OFFICE AT THE ABOVE TELEPHONE NUMBER.

(*Id.* ¶ 13.) After the July 6, 2012 letter was delivered to the office of Fagenson & Puglisi, the letter was forwarded to Plaintiff, who subsequently read it. (*Id.* ¶¶ 16, 18, 19.)

Plaintiff received no further communication from Defendant until Defendant again wrote to Plaintiff in a letter dated August 22, 2012. (*Id.* ¶ 22.) Like the July 6, 2012 letter, the August 22, 2012 letter was addressed to Plaintiff, care of Fagenson & Puglisi, at the address of Fagenson & Puglisi, and contained the name of Defendant's client, PAG. (*Id.* ¶¶ 23, 24, Ex. 2.) Unlike the July 6, 2012 letter, the August 22, 2012 letter did not contain the name of the original creditor or the original account number. (*Id.* Ex. 2.) The August 22, 2012 letter did, however, contain a client account number ("Clinet Acct #") that, like the original account number contained in the July 6, 2012 letter, ended in "6123." (*Id.* ¶ 27.) After the August 22, 2012 letter was delivered to the office of Fagenson & Puglisi, the letter was forwarded to Plaintiff, who subsequently read it. (*Id.* ¶¶ 24, 25, 26.)

Plaintiff alleges that the communications received from Defendant violate two provisions of the FDCPA. First, Plaintiff alleges that the July 6, 2012 letter constitutes a violation of the FDCPA because it does not contain "the name of the creditor to whom the debt is owed" as required by § 1692g(a)(2). Additionally, Plaintiff alleges that Defendant's failure to disclose the name of the creditor to whom the debt is currently owed in the July 6, 2012 letter constitutes a violation of 15 U.S.C. §§ 1692e and 1692e(10), which prohibit the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Furthermore, Plaintiff claims that Defendant's deception was further compounded by the inclusion of an original account number ending in 6123 in the July 6, 2012 letter and a client account number ending in 6123 in the August 22, 2012 letter. (*Id.* ¶¶ 39, 44.)

## DISCUSSION

### I.  *Standard of Review for Motion to Dismiss*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In recent years, the

Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss

under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-

known statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at

561.  Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only

enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided

further guidance, setting a two-pronged approach for courts considering a motion to dismiss.

First, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at

679.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting and citing Twombly, 550 U.S. at 556–57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## II. *The FDCPA*

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA 'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights.' " *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)). In keeping with this professed purpose, 15 U.S.C. § 1692g(a)(2) provides, in pertinent part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing… (2) the name of the creditor to whom the debt is owed.

In order to protect consumers effectively, claims of FDCPA violations are reviewed "from the perspective of the 'least sophisticated consumer.' " *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). The least-sophisticated-consumer standard "serves [a] dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320.

### III.     *Defendant's Motion to Dismiss Plaintiff's Claims*

#### A.     *Communication with a Consumer*

Initially, Defendant argues that the Court should dismiss Plaintiff's claims because Defendant addressed the letter to Plaintiff's attorney and "communications between a debt collector and an attorney for the consumer are not actionable under the FDCPA." (Def.'s Mem. in Supp. at 5.) "Where an attorney is interposed as an intermediary between a debt collector and a consumer, [the Court] assume[s] the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Kropelnicki*, 290 F.3d at 128. In the instant case, Defendant argues that the July 6, 2012 letter is not actionable under the FDCPA, "as it contains no threat to contact the consumer and was directed solely to Plaintiff's attorney." (Def.'s Mem. in Supp. 6.) Therefore, the Court will first determine whether the July 6, 2012 letter about which Plaintiff complains was directed to Plaintiff, a consumer protected under the FDCPA, or Plaintiff's attorneys.

Under the FDCPA, a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). In cases where an attorney was found to have been interposed as an intermediary

between a debt collector and a consumer, courts have noted that the communication in question was directed "solely to the debtor's attorney" and "contain[ed] no threat of forwarding the communication to the debtor [him]self." *See e.g., Tromba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 427 (E.D.N.Y. 2004). Here, in contrast, Defendant addressed the July 6, 2012 letter to "ERROL WRIGHT C/O FAGENSON & PUGLISI," the salutation portion of the letter addresses Errol Wright directly, and Plaintiff's attorneys are not referred to in any capacity throughout the body of the letter. (Am. Compl. ¶¶ 13, 15.) Although the July 6, 2012 letter arrived at the address of Fagenson & Puglisi, it is clear that the information it contained was designed to be conveyed, albeit "indirectly," to Plaintiff. 15 U.S.C. § 1692a(2). Therefore, the July 6, 2012 letter constituted "the initial communication with a consumer in connection with the collection of [his] debt." 15 U.S.C. § 1692g(a).

### B.    *Plaintiff's Claim Under 15 U.S.C. § 1692g(a)(2)*

Even though the July 6 letter is actionable under the FDCPA, however, the Plaintiff's § 1692g(a)(2) claim fails because the name of the current creditor, PAG, was apparent to the least sophisticated consumer. Pursuant to 15 U.S.C. § 1692g(a)(2), Defendant was required to include the "name of the creditor to whom the debt is owed" either within "the initial communication with a consumer in connection with the collection of any debt," here the July 6 letter, or by written notice within five days thereafter. Since there was no further communication with Plaintiff within five days of the July 6 letter, this court must "assess whether the 'least sophisticated consumer' who read the entire [July 6, 2012 letter] would have been aware that the name of the creditor appeared in the letter pursuant to [15 U.S.C. §] 1692g(a)(2)." *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (citing *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002)).

Plaintiff asserts that *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293 (E.D.N.Y. 2005) provides authority for the Court to find that Plaintiff has adequately plead Defendant's failure to identify the current creditor in its July 6, 2012 letter, (Pl.'s Mem. in Opp. 23), the Court, however, disagrees.  In *Sparkman*, the plaintiff received a form collection letter from the defendant with a subject line stating: "Re: The Bureaus Inc.  Original Creditor: CHASE VISA/MASTERCARD."  *Id.* at 295.  The body of the letter stated: "This office has been retained by The Bureaus Inc., an agent of the current owner of your account…."  *Id.*  The court in *Sparkman* found that, because The Bureaus, Inc. was not identified as a creditor in the subject line of the collection letter and was later described as "an agent of the current owner of [the plaintiff's] account," the language of the letter "suggest[ed] that the creditor [was] someone other than The Bureaus."  *Id.* at 301.  Therefore, the court held that "the least sophisticated consumer would not deduce from reading the Collection Letter that the name of the creditor seeking collection [was] The Bureaus," and that the plaintiff was "entitled to summary judgment on her claim that defendant violated 15 U.S.C. § 1692g(a)(2)."  *Id.*  Here, in contrast, Defendant's July 6, 2012 letter to Plaintiff in no way "suggest[s] that the creditor is someone other than" PAG.  *Id.*  Moreover, the least sophisticated consumer would not be uncertain as to his rights after reading Defendant's July 6, 2012 letter.  It is undisputed that the letter does, in fact, contain the name of the creditor to whom Plaintiff owes his debt, PAG.  (Am. Compl. ¶ 37.)  Although Defendant included the name of the current creditor, PAG, next to the label "Client," rather than explicitly stating that PAG is the current creditor, any confusion such a label may have caused was alleviated by Defendant's plain statement that the debt Defendant intended to collect was "on behalf of our above referenced client," i.e., PAG.  (Am. Compl. Ex. 1.)  The least sophisticated consumer would have known, after reading the entirety of the letter, that Defendant sought to

collect a debt on behalf of PAG, and that PAG was, therefore, the current creditor to whom he owed his debt. Plaintiff's claim pursuant to 15 U.S.C. § 1692g(a)(2) is therefore dismissed.

### C. *Plaintiff's Claims Under 15 U.S.C. §§ 1692e and 1692e(10)*

Plaintiff further argues that Defendant's failure to disclose the creditor to whom the debt is owed constitutes a misleading representation or deceptive means used to collect or attempt to collect a debt in violation of 15 U.S.C. §§ 1692e and 1692e(10). Section 1692e prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." Subsection 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." "A debt collection letter can be deceptive within the meaning of section 1692e(10) if: (1) the terminology used is vague or uncertain… or (2) it can reasonably be read to have at least two different meanings, one of which is inaccurate." *Pifko v. CCB Credit Servs., Inc.*, 2010 WL 2771832 at *4 (E.D.N.Y. July 7, 2010) (citations omitted).

Plaintiff alleges that Defendant used deceptive means to collect Plaintiff's debt by failing to "state who the current creditor is to whom the debt is owed." (Am. Compl. ¶ 38.) Plaintiff also alleges that Defendant's deception of the least sophisticated consumer was further compounded by "the fact that in its August 22, 2012 letter defendant has again stated that its client is [PAG] and the ***client*** account number ends in 6123 while in [the July 6, 2012 letter] defendant states that the ***original*** account number ends in 6123." (*Id.* ¶ 39.) Plaintiff contends that this action by Defendant would "lead[] plaintiff and the least sophisticated consumer to believe that the original creditor and defendant's client is one and the same." (Am. Compl. ¶ 40.) As noted supra, however, Defendant clearly indicated in the July 6, 2012 letter that Plaintiff's current creditor was PAG. Moreover, Defendant's inclusion of an original account

number ending in "6123" in the July 6, 2012 letter and subsequent inclusion of a client account number ending in "6123" in the August 22, 2012 letter was not so "deceptive" as to violate 15 U.S.C. §§ 1692e and 1692e(10). Defendant used no terminology that was "vague or uncertain" in communicating the two account numbers. *Pifko*, 2010 WL 2771832 at *4. The July 6, 2012 letter explicitly states that Defendant's client is PAG, and that the original creditor was Fingerhut, which Plaintiff concedes. (Am. Compl. ¶ 32.) The least sophisticated consumer could not reasonably believe, by reading the two similar account numbers listed in the July 6, 2012 and August 22, 2012 letters, that Defendant's client and the original creditor are "one and the same." (*Id.* ¶ 40.) Accordingly, Defendant's Motion is granted, and Plaintiff's Amended Complaint is dismissed.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendant's Motion to Dismiss Plaintiff's Amended Complaint is granted.[2]

**SO ORDERED.**

Dated: Central Islip, New York
　　　September 9, 2014

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　Unites States District Judge

---

[2] In response to Plaintiff's letter of January 25, 2013 requesting that the Court strike Defendant's reply memorandum because Defendant did not include a table of authorities and table of contents, the Court notes Defendant submitted a table of contents and table of authorities on January 28, 2013. Moreover, although Defendant's Reply brief exceeds the number of pages allowed by Individual Rule 3(E), the additional pages did not affect the outcome of this case.